# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAYTON CARL WILLIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-700-AMG** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Dayton Carl Willis ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1382.  (Doc. 1).  The Commissioner answered the Complaint and filed the Administrative Record ("AR") (Docs. 9, 10), and the parties have fully briefed the issues.  (Docs. 17, 19, 20).[1]  The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 15, 16).  Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination.  Citations to the Administrative Record refer to its original pagination.

## I.      The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is

2

engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History

Plaintiff filed applications for DIB and SSI on August 15, 2019, alleging a disability onset date of March 6, 2017. (AR, at 78-79, 98-99, 233). The SSA denied the applications initially and on reconsideration. (*Id*. at 124-30, 135-45). Then an administrative hearing was held on April 8, 2021. (*Id*. at 52-77). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 15-34). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

### III.   The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 6, 2017, the alleged onset date.  (AR, at 18).  At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of post-traumatic stress disorder (PTSD) and bipolar disorder, type II.  (*Id.*)  At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments.  (*Id.* at 18-19).  The ALJ then determined that Plaintiff had the RFC to:

> perform a full range of work at all exertional levels, but with the following non-exertional functional limitations: cannot relate to the general public; can adjust to a work situation and some changes in a usually stable work situation; and, cannot tolerate an environmental [sic] with noise greater than "moderate," as defined in the Dictionary of Occupational Titles.

(*Id.* at 23).  Then, at Step Four, the ALJ found Plaintiff could not perform any past relevant work.  (*Id.* at 32).  At Step Five, however, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, such as hand launderer, hospital cleaner, and lab equipment cleaner.  (*Id.* at 33-34).  Thus, the ALJ found that Claimant had not been under a disability since March 6, 2017.  (*Id.* at 34).

### IV.   Claims Presented for Judicial Review

Plaintiff contends the ALJ: (1) did not properly consider the prior administrative medical findings; and (2) erred at Step Five because Plaintiff is unable to perform any of the jobs identified by the ALJ. (Doc. 17, at 2).  The Commissioner asserts Plaintiff's claims are without merit.  (Doc. 19).  The Court finds the ALJ erred by not explaining how he considered the supportability of the state agency psychological consultants' prior administrative medical findings, but that the error is harmless because Plaintiff could

perform the jobs identified by the vocational expert ("VE") and the ALJ even with the limitations assessed by the psychological consultants.

## V.      Analysis

### A.      The ALJ Erred in His Consideration of the Prior Administrative Medical Findings.

#### 1.      Proper Consideration of Medical Opinions and Prior Administrative Medical Findings

An ALJ is required to evaluate every medical opinion and prior administrative medical finding of record.  *See* 20 C.F.R. §§ 404.1520c(b); 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").  "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions.  *Id.* §§ 404.1513(a)(2); 416.913(a)(2).  "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant] is disabled, about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review . . . in [the] current claim based on their review of the evidence in [the] case record."  *Id.*  §§ 404.1513(a)(5); 416.913(a)(5) (including the existence and severity of impairments and symptoms, statements about whether an impairment meets or medically equals a listing, the RFC, and how failure to follow prescribed treatment relates to the claim).

An ALJ considers medical opinions and prior administrative medical findings using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).   Supportability and consistency are the most important factors.   *Id.* §§ 404.1520c(a), 416.920c(a).   "Supportability" examines how closely connected a medical opinion or prior administrative medical finding is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) is, the more persuasive the medical opinion(s) or prior administrative medical findings will be."   *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1).   "Consistency," on the other hand, compares a medical opinion or prior administrative medical finding to the other evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."   *Id.* § 404.1520c(c)(2); 416.920c(c)(2).   The ALJ must articulate how persuasive he finds a medical opinion or prior administrative medical finding.   *Id.* §§ 404.1520c(b); 416.920c(b). In doing so, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings."   *Id.* §§ 404.1520c(b)(2);

416.920c(b)(2).[3]  The ALJ's rationale must be "sufficiently specific" to permit meaningful

appellate review.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

> **2.    The ALJ Failed to Explain His Consideration of the Supportability Factor in His Review of the Prior Administrative Medical Findings.**

Mary Rolison, PhD, and Ryan Jones, PhD – the state agency psychological

consultants – reviewed medical records along with Plaintiff's subjective complaints and

representations of his activities of daily living.[4]  (AR, at 83-84; 92-93; 105-06; 117-18).

Based on their review of the record, they both found Plaintiff had moderate limitations in

his ability to: (1) understand, remember, or apply information; (2) interact with others; (3)

concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  (*Id.* at 83, 92, 105,

117).  They both found Plaintiff to be markedly limited in his ability to understand,

remember, and carry out detailed instructions.  (*Id.* at 85, 94, 108, 120).  Additionally, they

each found Plaintiff to be markedly limited in his ability to interact appropriately with the

general public.  (*Id.* at 86, 95, 109, 121).  Dr. Jones – but not Dr. Rolison – found Plaintiff

was moderately limited in responding appropriately to changes in the work setting.  (*Id.* at

109, 121).

---

[3] An ALJ must consider, but need not explicitly discuss, the remaining factors (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record.  *See* 20 C.F.R. §§ 404.1520c(b)(2), (3); 416.920c(b)(2), (3).

[4] Dr. Rolison reviewed medical records from 2019, while Dr. Jones reviewed medical records from 2019 and 2020.  (AR, at 83-84; 92-93; 105-06; 117-18).

Both Dr. Rolison and Dr. Jones found Plaintiff could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could not relate to the general public.  (*Id.* at 86, 95, 109, 121).  Dr. Rolison found Plaintiff could adapt to a work situation, but Dr. Jones found Plaintiff to be more limited – opining that Plaintiff could "adjust to a work situation and some changes in a usually stable work situation."  (*Id.*)

The ALJ addressed Dr. Rolison and Dr. Jones's findings together.  First, the ALJ summarized Dr. Rolison's and Dr. Jones's findings, in which he incorrectly stated that *both* psychological consultants opined that Plaintiff "can adjust to a work situation and some changes in a usually stable work situation."  (*Id.* at 32).  Then, the ALJ determined:

> Overall, the opinions of Dr. Jones and Dr. Rolison are not consistent with the medical treatment record, [Plaintiff's] activities of daily living, or the opinions of Dr. Danaher.  Further, they are not consistent with the objective medical evidence of record, particularly with the subsequent examination performed by Dr. Danaher.  More directly, upon review of the medical evidence of record, the undersigned finds [Plaintiff] to have significantly less understanding, remembering, carrying out, concentrating, persisting, and maintaining pace limitations than were assessed at either level of consideration.  Accordingly, the undersigned finds the opinions of Dr. Jones and Dr. Rolison to be unpersuasive, instead finding greater persuasive value in the medical evidence of record and the subsequent opinions of Dr. Danaher.

(*Id.*)

Plaintiff makes a variety of arguments in support of his claim that the ALJ improperly considered the prior administrative medical findings.  Plaintiff first contends the ALJ "fail[ed] to tell us exactly how much 'significantly less limitations' the reviewers' opinions were than those opinions of the mental CE."  (Doc. 17, at 3).  Plaintiff also asserts

the ALJ engaged in impermissible picking and choosing.  (*Id.* at 4, 6).  He contends the ALJ did not discuss the supportability of Dr. Jones and Dr. Rolison's findings.  (*Id.* at 4-5).  Plaintiff additionally contends that "[b]ecause there were two different opinions bearing on the same basic limitations, the ALJ was legally bound to discuss the remaining three factors of relationship to the claimant, specialization, and other factors."  (*Id.* at 5).  Finally, Plaintiff contends the "evidence overwhelms the ALJ's findings and is consistent with, and supportive of, at least some of the State agency findings with which he disagreed."  (*Id.* at 11).  The Court finds the ALJ erred by not discussing the supportability factor in his consideration of the prior administrative medical findings.

The ALJ's explanation for finding Dr. Jones and Dr. Rolison's findings unpersuasive is based on the consistency factor alone.  (AR, at 32) (finding Dr. Jones's and Dr. Rolison's findings were inconsistent with the treatment record, objective medical evidence of record, activities of daily living, and the consultative examining doctor's opinion).  The ALJ failed to explain how he addressed the supportability factor.  The ALJ's analysis is missing any discussion about how Dr. Jones or Dr. Rolison supported or failed to support their own opinions with objective medical evidence or supporting explanations.  *See* 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1) (defining supportability, which contemplates that the ALJ consider the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her . . . prior administrative medical finding(s)").  So, it is not apparent from the decision if or why the ALJ determined the state agency consultants did not support their conclusions.

The Commissioner contends that "[a]lthough the ALJ did not specifically mention the 'magic word' of 'supportability' . . . the ALJ's decision, when considered as a whole, shows that he considered the objective medical evidence in evaluating these findings, thus showing that he considered their supportability."  (Doc. 19, at 9).  In support of this argument, the Commissioner focuses on the ALJ's statement that he engaged in a review of the medical evidence and found Dr. Danaher's opinion more persuasive.  (*Id.* at 10).  But these considerations do not amount to discussion about supportability because they do not discuss how well the psychological consultants supported their own opinions.  Further, the Commissioner contends the ALJ "explained in detail the relatively benign mental status examination findings that were not supportive of the restrictive prior administrative findings."  (*Id.*) (citing AR, at 24-29).  But here too, it is not apparent from the ALJ's summary of Plaintiff's medical history how well he believed Dr. Jones or Dr. Rolison supported their findings.  There may be good reasons for determining the findings were not supported by their explanations – for instance, the Court notes that the medical record is more expansive than that reviewed by the state agency consultants.  But the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ.  *See Vigil*, 805 F.3d at 1201.

Thus, the Court concludes the ALJ erred because he is required to explain how he considered the supportability factor.  *See id.* §§ 404.1520c(b)(2); 416.920c(b)(2); *Shawn A. W. v. Kijakazi*, 2022 WL 807361, at *7 (N.D. Okla. Mar. 16, 2022) ("[I]t is not apparent from the ALJ's discussion of Ms. Leahy's opinion that he considered the supportability of

her findings. . . . The ALJ is required to articulate his findings on this factor, and he should be sure to do so on remand.").

    **B.**    **The ALJ's Error is Harmless**

        **1.**    **The ALJ Included the Limitations From the Prior Administrative Medical Findings in the Hypothetical to the Vocational Expert.**

An ALJ's error can be considered harmless where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). This is so where "it is clear from the hypothetical question posed to the VE that the ALJ recognized" a limitation not specified in "the ALJ's written decision." *Moua v. Colvin*, 541 F. App'x 794, 798 (10th Cir. 2013). When the ALJ relies on a VE's response to a hypothetical question that included the restriction omitted from the RFC, "any error by the ALJ in omitting the restriction from his written decision is harmless and does not require a remand." *Id.* Here, the ALJ's error is harmless because even if the ALJ had found persuasive and fully adopted into the RFC the limitations assessed by Dr. Rolison and Dr. Jones, the VE testified that Plaintiff could have performed the jobs identified at Step Five under those limitations.

The ALJ asked the VE whether a hypothetical individual could perform work if limited to: performing simple tasks with routine supervision, cannot relate to the general public, can relate to supervisors and peers on a superficial work basis, can adjust to a work situation and some changes in a usually stable work situation – all limitations assessed by Dr. Rolison and Dr. Jones – as well as cannot tolerate team work type jobs, cannot perform

"fast pace production pace type work," could not have strict production performance quotas, produced about ten percent less than an average employee on a weekly basis, and could tolerate no noise greater than moderate as defined in the Dictionary of Occupational Titles ("DOT").[5] (AR, at 71-75). The VE testified that the individual could perform the jobs of hand launderer, hospital cleaner, and laboratory equipment cleaner. (*Id.* at 75). The ALJ, relying on the VE's testimony, found Plaintiff could perform those jobs. (*Id.* at 34).

### 2.   There Is No Conflict Between a Limitation to Simple Tasks with Routine Supervision and the Jobs Identified by the VE with Reasoning Level 2.

Plaintiff also contends that "the jobs listed by the VE exceed an ability to perform simple tasks with routine supervision." (Doc. 17, at 11). More specifically, he contends that a limitation to simple tasks is inconsistent with the jobs identified by the VE and ALJ at Step Five based on the reasoning level of those jobs. (*Id.* at 12).

The Dictionary of Occupational Titles ("DOT") explains that

General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study. The GED Scale is composed of

---

[5] The ALJ used shorthand in addressing the hypothetical limitations at Step Five, but also incorporated the "the first five hypotheticals" including his "original" hypothetical when he asked VE questions regarding the ability to perform Plaintiff's past relevant work. (AR, at 74). The original hypothetical included each of the limitations assessed by the state psychological consultants – simple tasks with routine supervision, cannot relate to the general public, can relate to supervisors and peers on a superficial work basis, and can adjust to a work situation and some changes in a usually stable work situation. (AR, at 71-72). So, despite the use of shorthand, the Court is confident the VE understood the parameters of the ALJ's hypothetical at Step Five.

> three divisions: Reasoning Development, Mathematical Development, and
> Language Development.

DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702.  The Scale

of GED Reasoning Development ranges from Level 1 to Level 6.  "GED, and thus

reasoning level, relates to the amount of education (formal or informal) an occupation

requires." *Karen Jean M. v. Saul*, 2020 WL 5057488, at \*14 (D. Kan. Aug. 27, 2020).

The jobs identified by the VE and ALJ are all considered to require Reasoning Level

2.  *See* DOT 361.684-010, 1991 WL 672982 (hand packager); DOT 323.687-010, 1991

WL 672782 (hospital cleaner);   DOT 381.687-022, 1991 WL 673259 (laboratory

equipment cleaner).  Plaintiff contends "reasoning level[] 2 . . . appear[s] to be in direct

conflict with the ALJ's hypothetical . . . which limits [him] to jobs with simple tasks, not

detailed, and seems more similar to the restrictions of reasoning level 1." (Doc. 17, at 12).[6]

But the Tenth Circuit rejected a similar argument in *Stokes v. Astrue*, where the claimant

argued that a limitation to simple, repetitive, and routine work is only consistent with jobs

with a reasoning level of one.  274 F. App'x 675, 684 (10th Cir. 2008).  Instead, the court

held the claimant could perform jobs with a reasoning level of two.  *Id.* (citing *Hackett v.

Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)).   Thus, the Court rejects Plaintiff's

argument.  *See Steele v. Kijakazi*, No. CIV-20-1294-STE, 2022 WL 801579, at \*6 (W.D.

Okla. Mar. 15, 2022) (finding the claimant's "limitations do not inherently conflict with

reasoning level two" where "the ALJ limited [her] to performing simple, routine, and

---

[6] Plaintiff also argued jobs with reasoning level 3 conflict with simple tasks.  (Doc. 17, at 12).  But that argument has no relevance here, where each of the jobs are Reasoning Level 2.

repetitive tasks"); *Dickson v. Saul*, No. CIV-19-248-SM, 2019 WL 5684513, at *3 (W.D. Okla. Nov. 1, 2019) (finding "no conflict between performing simple work tasks and the ability to perform the job of touch-up screener, which requires a reasoning level of two").[7]

Because the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy with the limitations assessed by Dr. Jones and Dr. Rolison, the ALJ's error in considering the prior administrative medical findings is harmless.  *See Moua v*, 541 F. App'x at 798; *Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) ("Because there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job identified by the VE's testimony, any oversight by the ALJ in including this limitation is harmless error."); *Voegeli v. Kijakazi*, No. CIV-22-57-SM, 2022 WL 4002660, at *5 n.2 (W.D. Okla. Sept. 1, 2022) ("Even if the ALJ erred by not specifically including the limitation in the RFC, the error would be harmless—the hypothetical question to the VE tracked Dr. Stevens's opinion and the VE testified the hypothetical individual could perform the jobs identified by the ALJ at step five.").

---

[7] Plaintiff also argues that "[a] limitation to simple instructions in inconsistent with both reasoning level 2 and reasoning level 3 instructions."  (Doc. 17, at 13).  But, Dr. Rolison and Dr. Jones found Plaintiff was limited to "simple tasks."  (AR, at 86, 95, 109, 121).  So, Plaintiff's argument regarding "simple instructions" is not relevant.  Further, "district courts in this circuit, including this one, have repeatedly rejected [this] argument and found that a limitation to understanding, remembering, and following simple instructions does not create an apparent conflict with occupations requiring GED Reasoning Level 2." *Robertson v. Kijakazi*, No. CIV-21-1183-AMG, 2023 WL 1871110, at *3 (W.D. Okla. Feb. 9, 2023) (collecting cases).

**VI.    Conclusion**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner.

**SO ORDERED** this 18th day of September, 2023.


AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

16